Submitted on record and brief July 27, 1983, reversed and
remanded for reconsideration January 4, 1984

## TAYLOR,
*Petitioner,*

*v.*

## EMPLOYMENT DIVISION et al,
*Respondents.*

(83-AB-329; CA A27543)

674 P2d 64

James G. Taylor, Lake Oswego, filed the brief pro se for petitioner.

Michael D. Reynolds, Assistant Attorney General, Salem, waived appearance for respondent Employment Division.

No appearance for respondent Oregon Liquor Control Commission.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Warden, Judge.

GILLETTE, P. J.

## GILLETTE, P. J.

We reverse and remand this unemployment insurance case for reconsideration because the referee's decision, which the Employment Appeals Board (EAB) adopted on review, ignores a crucial undisputed fact. When that fact is included, we cannot say that the nexus between the agency's reasoning and the facts is rational, and therefore we cannot say that the order is supported by substantial evidence in the record as a whole. *McCann v. OLCC,* 27 Or App 487, 503, 556 P2d 976 (1976), *rev den* (1977).

Claimant worked for the OLCC as an enforcement agent for a number of years. Near the end of his employment he became involved in a dispute with his superiors over certain OLCC policies and certain of his actions. The dispute led to his suspension without pay and to the filing of charges preparatory to his dismissal. He contested the dismissal but, a month and half after the suspension, accepted a settlement. The settlement provided that he would resign and receive a payment of $5,500 and that the OLCC would not make detrimental comments concerning him to other employers or deny him his unemployment insurance benefits. After he applied for unemployment benefits, the Assistant Director for Employment found that he had voluntarily left work because he could not support his employer's policies and that that reason was not good cause. Benefits were denied.

The referee found that the employer was determined to prevent claimant from returning to work but that petitioner should have continued through the appeals process to protect his existing employment rather than taking a settlement and resigning. He reasoned in part as follows:

"The claimant did resign. It is recognized that the employer was determined not to let the claimant return. However, the claimant still had part of the appeals process available to him. He was being faced with a discharge, but that possibility does not establish good cause to leave continuing employment. * * * Therefore, the claimant voluntarily left his employment. An individual who voluntarily leaves his employment is subject to disqualification unless he left this employment with good cause.

"* * * * *

"The claimant's statement that his supervisors did not like him is a valid estimate of his relationship with the supervisors. He also had no real affection for the supervisors. This does create a difficult working relationship, but this problem was partly of the claimant's own making. The claimant was utilizing information contrary to instructions given to him. His reaction to the discipline notice added to the problems to a point where continued employment would have been a real challenge. However, as difficult as these circumstances were, it was not clearly established that this employment was not suitable or that he could not have continued working there, at least until a final resolution of his discharge was determined. The claimant has not established that he had good cause to leave this employment."

We need not determine whether substantial evidence supports the referee's finding that claimant's resignation as part of a settlement of a disputed termination proceeding is necessarily without good cause when, after a successful appeal of the proposed discharge, the working conditions would have been intolerable, or whether it supports the referee's finding that such a resignation is not a discharge. There is a more basic problem with the referee's reasoning in this case.

The referee relied on claimant's duty to continue working while pursuing the appeal of his proposed discharge, yet the claimant was not working: he had been suspended for over a month, and there was no end in sight to the suspension. The referee found that claimant had been suspended but failed to find the undisputed fact that the suspension was without pay. It is difficult to understand how the referee could require claimant to continue "working" at a job where he was doing no work, for which he was receiving no pay, and for which he would receive no pay until a lengthy appeals process, possibly including judicial review, was over.

We assume that the referee and EAB overlooked the fact that the suspension was without pay and that claimant therefore had no possibility of work-related income from the employer until the discharge was finally resolved. This fact could certainly affect their determination of whether claimant's reasons for accepting the settlement and resigning were "of such gravity that [he had] no reasonable alternative but to leave work." Without consideration of this fact, the reasoning of the order does not follow from the facts of the case, and we

cannot say that the order is supported by substantial evidence in the record. ORS 657.282; ORS 183.482(8)(c); *see also Sothras v. Employment Division,* 48 Or App 69, 616 P2d 524 (1980).

Reversed and remanded for reconsideration.